**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Walter C. WENCKE,**
**Defendant-Appellant.**

**No. 78–2346.**

United States Court of Appeals,
Ninth Circuit.

Aug. 31, 1979.

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

Thomas M. Coffin, Asst. U. S. Atty. (on the brief), Thomas M. Coffin, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

John A. Mitchell, San Diego, Cal., on brief, for defendant-appellant.

Before ELY and WALLACE, Circuit Judges, and PREGERSON,* District Judge.

PER CURIAM:

Wencke appeals his conviction for mail fraud (18 U.S.C. § 1341) and making false statements in reports to the Securities and Exchange Commission (SEC) and shareholders (15 U.S.C. §§ 78m, 78n, and 78ff). He contends that prosecutorial misconduct (primarily involving Lipman, a United States Attorney who participated in related civil and criminal proceedings) denied him a fair trial. We affirm.

The convictions stem from a complex scheme of fraud perpetrated by Wencke, along with his codefendants, on shareholders of a publicly-held company. Prior to federal proceedings, Wencke petitioned a Nevada court for a receivership of the public company. Because Nevada does not require a disinterested receiver, Wencke became the receiver. The public company had been the owner of certain hotels which constituted the major disputed assets. The California Corporation Commissioner appeared in the Nevada litigation, and the SEC also had some limited contact with the Nevada court. The Nevada court found that one of Wencke's associates, and not Wencke himself, was responsible for the public company's difficulties.

After the corporation was placed into receivership the SEC commenced an investigation in which Lipman participated. Subsequently, the SEC filed a civil suit against Wencke, his wife, certain associates, and a number of corporations and charitable trusts which he and his associates controlled, alleging that he was looting the assets of publicly owned companies in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934. Lipman served as one of the SEC counsel.

Wencke's associates settled with the SEC. Wencke, his wife, and the corporations and trusts remained as defendants.

Wencke refused to be sworn at a deposition the SEC had scheduled. Because of this willful refusal to obey its discovery order, the district court struck the answers of all defendants and entered default judgments against them. On appeal, we affirmed. *SEC v. Wencke,* 577 F.2d 619 (9th Cir. 1978).

In June and July 1977, a federal grand jury heard evidence of possible related criminal violations by Wencke and his codefendants. Lipman was appointed Special Assistant United States Attorney and participated as Assistant United States Attorney at the subsequent trial.

The grand jury returned an indictment against Wencke and his codefendants. After an additional grand jury investigation, superseding indictments, and entered guilty pleas by the codefendants, a jury trial commenced as to Wencke. The jury returned a partial verdict finding Wencke guilty of 11 counts of mail fraud and two counts of making false statements to the SEC.

■ Wencke first claims that the United States, through various acts of Lipman and the California Corporation Commissioner, became a "de facto party," bound by the Nevada proceedings. In review of the SEC civil trial, we dismissed this argument as "nonsense." *SEC v. Wencke, supra,* 577 F.2d 619, 622–23. Wencke's "de facto party" argument in this case is no more persuasive than in his civil case. The United States was not a party to the Nevada proceedings, and this case concerns criminal charges exclusively federal in nature. The federal court was neither bound nor affected by the Nevada proceedings. *SEC v. Wencke, supra,* 577 F.2d at 622. *See Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

■ Wencke next claims that Lipman showed bad faith toward the Nevada court by concealing evidence and failing to obey a court order to turn over evidence. Not only is the United States not bound by the Neva-

---

* Honorable Harry Pregerson, United States District Judge, Central District of California, sitting by designation.

da proceedings, but the record does not support a finding that specified evidence was withheld and more importantly does not show how nondisclosure directly affected the criminal trial. Wencke's allegation that Lipman and the California Corporation Commissioner agreed to conceal evidence is also without foundation.

Wencke further alleges that Lipman presented a transcript in *SEC v. Wencke, supra,* after deleting and concealing exhibits, and after deleting pages from an affidavit. The district court in that case found no credible evidence presented to indicate that the SEC denied Wencke due process or acted improperly or in bad faith. There is no reason to reopen that determination.

Wencke cites several instances to show a pattern of animosity that should have precluded Lipman's appointment as Special Assistant United States Attorney in this case. He establishes neither prosecutor vindictiveness nor animosity. The allegations are unsupported by the record.

■ Wencke next refers to what he considers numerous instances of apparent or actual conflict of interest on the part of Lipman. There is no authority which would allow a defendant to disqualify a government attorney by merely alleging potential civil litigation. Similarly, threatening to file a grievance with a bar association against a United States Attorney does not constitute a conflict of interest requiring disqualification. Moreover the record does not support a finding of any violation of the ABA disciplinary code.

■■ Ultimately, Wencke's allegation of conflict of interest must rest on a claim of inherent conflict when a government attorney involved in a civil investigative phase is appointed Special Assistant United States Attorney in subsequent grand jury proceedings. That alone does not require disqualification. *United States v. Birdman,* 602 F.2d 547 at 561–563, No. 78–1940, slip op. at 25–29 (3d Cir. June 25, 1979); *In re Perlin,* 589 F.2d 260, 264–68 (7th Cir. 1978) (per curiam); *see United States v. Dondich,* 460 F.Supp. 849, 852–58 (N.D.Cal.1978), *appeals*

*docketed,* No. 79–1360 (9th Cir. May 25, 1979), No. 79–1399 (9th Cir. June 12, 1979). Moreover, Lipman played only a secondary role in the grand jury proceedings and there is no evidence that Lipman was in a position to control or direct the proceedings. *See United States v. Doe,* 541 F.2d 490 (5th Cir. 1976).

■ Wencke next claims that after giving notice to Lipman that "250 cartons" of alleged evidence were in the hands of a party with a motive to conceal the evidence, Lipman failed to protect such evidence by timely subpoena. Wencke cites no authority requiring the government to affirmatively protect materials alleged to be in another's possession. However, even if such an affirmative duty exists, there appears no foundation in the record, aside from assertions by Wencke, to indicate the materiality of the alleged documents to his criminal trial.

■ Wencke claims that Lipman's failure to identify exhibits adequately violated his duty of care in assembling evidence in a criminal trial and impaired his ability to present a defense. Wencke further alleges that such failure to identify exhibits rendered the grand jury transcripts "meaningless." However, Wencke did not establish how this failure to identify materials specifically prejudiced his criminal trial. *United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541.

■ Wencke alleges that after judgment in the civil case, Lipman utilized interrogatories as a subterfuge to conduct criminal discovery. The record does not support the charge. Nor is there a basis for holding that parallel civil and criminal proceedings are per se invalid, as Wencke suggests. *See Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Friedman,* 532 F.2d 928 (3d Cir. 1976).

The record refutes appellant's allegation that the trial court did not allow appellant to pursue the doctrine of improper conduct by governmental agencies during the mo-

tion hearing, to show that subpoenas were improperly quashed and testimony improperly restricted. Rather, the record shows that Wencke himself chose not to pursue the issue.

■ The subpoena which sought "all files, records, correspondence, writings, interoffice communications, interagency communications, and reports relating to the investigation of Walter C. Wencke . . . ." was properly quashed as being overbroad in scope.

■ Wencke's claim that the prosecution withheld material specified to be favorable to him in violation of the *Brady* Rule, is dependent on the allegations of concealment and deletion discussed above. Wencke failed to establish that *specified* evidence clearly *favorable* to his case was withheld.

■ Wencke next claims that Lipman selectively recorded evidence in the SEC investigation and delayed indictment, thus creating a "slanted record." The record does not show that specified exculpatory matters were suppressed. Wencke has not shown that the preindictment delay caused substantial prejudice to his rights to a fair trial or that the delay was an intentional device to gain tactical advantage over him. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Lovasco,* 431 U.S. 783, 796–97, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). His speculation is insufficient.

Wencke next alleges that prosecuting attorney Campbell interfered with the grand jury by speaking privately with a member of that grand jury. The allegation of impropriety is without foundation.

■ As to Wencke's allegation that the grand jury proceedings were selectively recorded, even assuming impropriety, the required prejudice was not demonstrated. *United States v. Thompson,* 493 F.2d 305, 308 (9th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974).

■ Wencke claims, without authority, that the Attorney General must first evalu-ate a case before the SEC can refer it to the United States Attorney. However, 15 U.S.C. § 78u(d) (the referral statute) is discretionary. The term "Attorney General" as employed in the discretionary language should not be taken to exclude United States Attorneys or other Department of Justice personnel charged with the enforcement of our criminal statutes.

Although Wencke does not directly challenge the sufficiency of the evidence as to his conviction, he appears to attack his indictment based on such insufficiency. His challenge is without merit. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

■ Wencke's tax returns were properly admitted into evidence. There is no evidence that the government received any tax return information in this case from the Internal Revenue Service prior to obtaining a court order pursuant to 26 U.S.C. § 6103. Information revealed to the government prior to the section 6103 orders was apparently voluntarily disclosed to the SEC or the grand jury by either Wencke himself or his accountant. The statute does not require a court order before a taxpayer or some third party can provide tax information to a government agency.

■ Finally, Wencke's claim that "certain groups" were excluded from the jury panel contrary to law, is frivolous. The admission of a transcript of Wood's testimony in the Nevada receivership proceeding was not error. The trial court did not abuse its discretion in refusing to admit evidence of one of the codefendant's misconduct with respect to agricultural entities within the public company complex.

AFFIRMED.