UNITED STATES of America, Plaintiff,

v.

**Patricia Campbell HEARST, Defendant.**

**Cr. No. 74–364–OJC.**

United States District Court, N. D. California.

Dec. 19, 1975.

James L. Browning, Jr., U. S. Atty., F. Steele Langford, David P. Bancroft, Edward P. Davis, Jr., Asst. U. S. Attys., San Francisco, Cal., for United States.

F. Lee Bailey, J. Albert Johnson, Boston, Mass., Thomas May, Brookline, Mass., for the defense.

## ORDER RE DEFENSE AND PROSECUTION PRETRIAL MOTIONS

OLIVER J. CARTER, Chief Judge.

Counsel for both plaintiff and defendant have filed a total of twelve pretrial motions in this case. Argument on these motions was heard in open court on December 11, 1975. In this Order the Court will now dispose of the aforementioned motions in the following sequence: defense motions first; Government's second.

### DEFENSE MOTIONS

I. DEFENSE MOTION TO GAIN ACCESS TO GOVERNMENT'S FILES

By this motion the defendant seeks to have the Government open its files in

this case for the purpose of according the defense unrestrained access to "all materials, reports, summaries and other investigative information relating in any fashion to the offenses set forth by the indictment."

In support of this open-ended request, defense counsel assert that the limited ability of the defendant to remember and relate the critical events surrounding the alleged commission of the crime prevents her from adequately assisting counsel in her defense and that, therefore, there is a compelling need to acquire the information contained in the Government's files which will aid in the reconstruction of these critical events.

In urging that the Court grant this motion, the defense relies principally upon the case of *United States v. Stubblefield,* 325 F.Supp. 485 (E.D.Tenn. 1971), which granted a similar request by a defendant who, although competent to stand trial, was afflicted with total involuntary amnesia as to the events immediately encompassing the crime. In acceding to the defendant's extraordinary request, however, the court in *Stubblefield* remarked that it was doing so under "special circumstances, limited to the showing in this particular case . . ." *Id.* at 486.

■ The "special circumstances" present in that case do not obtain here. There has been no medical evidence thus far produced that the defendant, Patricia Hearst, is suffering from such severe amnesia as to prevent her from assisting in the reconstruction of events vital to her defense. Indeed, as the Court noted in its Memorandum and Order of November 7, 1975, the psychiatrists commissioned to examine the defendant for competency to stand trial were by no means certain that whatever memory impairment she evidenced in these examinations was entirely involuntary. Furthermore, the defendant's apparent ability to relate many of the details of her kidnapping and subsequent period of captivity, evidenced in her sworn affidavit of September 23, 1975, casts doubt on the allegation that she cannot now reconstruct those events for the benefit of her own defense.

■ In denying the motion to gain total access to the Government's files, the Court does not mean to imply that the defense is barred from obtaining whatever information the Government may possess that may arguably be considered exculpatory. The Court fully intends to see that the constitutional requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), are complied with in their entirety.

■ The Government has already indicated that it has or will voluntarily accord defense counsel access to various enumerated items of physical evidence and documents that will be of assistance in chronicling the events to which the defense motion has been addressed. *See* Government's response at pages 7–8. Although voluntary decisions to exchange information in criminal cases is certainly permissible—and in this Court's estimation laudable—Rule 16(a) of the Federal Rules of Criminal Procedure neither requires nor encourages unfettered pretrial discovery in the form of blanket revelation of the entire substance of the case to be presented by either the prosecution or defense. *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir. 1974); see *United States v. Baxter,* 492 F.2d 150, 173 (9th Cir. 1973); *see also United States v. Washington,* 150 U.S.App.D.C. 68, 463 F.2d 904, 906 (1972). The Court is bound by the restrictions Congress has seen fit to place upon pretrial discovery in Rule 16. See *United States v. Spagnuolo,* 515 F.2d 818, 821 (9th Cir. 1975).

The defense not having made a sufficient showing of the need to obtain open access to the Government's files in this case, and having available to it discovery devices deemed adequate to achieve the desired objective of protecting the defendant's rights, the motion will be denied.

## II. DEFENSE MOTION FOR DISCOVERY OF IDENTITY OF WITNESSES AND RELATED INFORMATION

The defendant moves to obtain from the Government a complete list of names and addresses of witnesses to the substantive events at issue, witnesses who have given statements to the Government relating to any of these events, and witnesses the Government may anticipate calling to testify at trial. In addition, the defense seeks in this motion any information the Government may now possess or have reason to suspect it can obtain, which could be used in impeaching these witnesses.

Congress recently had the opportunity to act upon a proposed amendment to Rule 16 of the Federal Rules of Criminal Procedure which would have provided for reciprocal discovery of prosecution and defense witness lists. The amendment was rejected, however, Congress evidently voicing its disapproval of mandatory divulgence of witness lists in criminal cases. *See* 1975 U.S.Code Congressional and Administrative News, p. 716.

In addition, the Ninth Circuit has repeatedly taken the position that in a non-capital case the Government need not disclose the names of its witnesses prior to trial. *United States v. Thompson,* 493 F.2d 305, 309 (9th Cir. 1974); *United States v. Young,* 470 F.2d 962, 964 (9th Cir. 1974); *United States v. Glass,* 421 F.2d 832 (9th Cir. 1969). One Ninth Circuit case which appears to stray from this line of precedent is *United States v. Richter,* 488 F.2d 170 (9th Cir. 1973). This case, however, preceded both *Thompson, supra,* and the Congressional decision to reject the proposed amendment to Rule 16. Thus its continued validity is suspect.

■ Even if the trial court does retain discretion under *Richter* to grant such discovery, it must be exercised only upon a sufficient factual showing of need. *See Richter, supra,* at 174–75. Based as it is upon the questionable assertion that the defendant herself is unable to furnish the information necessary to an accurate reconstruction of the substantive events, the defense request for disclosure of witnesses is not substantiated by the necessary factual showing. Moreover, there is no controlling authority under which the Court must grant the sweeping request by defense counsel for the names and addresses of all persons who have given statements which "relate in any way to the events alleged in the indictment in this case."

■ As to the defense request for statements of prospective government witnesses, the Government has indicated its willingness to divulge such statements, in advance of the statutory requirements of the Jencks Act, 18 U.S.C. § 3500, provided the defense fully complies with its own obligations under Rule 16(b). Although the Court cannot compel the Government to do more than is required by the Jencks Act in this regard, *United States v. Spagnuolo, supra,* the Government's express acquiescence on this matter permits the Court to deem the defense motion as to the discovery of such statements withdrawn.

Likewise, since the Government has expressed its intention to cooperate fully in meeting its *Brady* requirements as to any evidence that may tend to impeach the testimony of a Government witness and thereby exculpate the defendant, the motion to compel disclosure of such material will also be deemed withdrawn.

## III. DEFENSE MOTION FOR PRODUCTION OF EXPERT WITNESSES AND RELATED MATERIAL

1. The Government has indicated it does not oppose the production of any materials, which are under its control or to which it has access, that may reasonably be described as psychological profiles of members of the Symbionese Liberation Army and related participants in the kidnapping of the defendant. This portion of the motion will therefore be deemed withdrawn.

■ 2. In addition, the defendant seeks the identities of all experts known to the Government who would be able to

testify about the effects of kidnapping on the victims thereof. The Court finds no support for the defense assertion of entitlement to such information. As the Government correctly notes in its responsive memorandum, it is under no obligation to search for potential defense witnesses. As the Fifth Circuit has recently stated, "there has been no holding that *Brady* confers on the defense a right to receive information or evidence greater than that possessed by the prosecution . . . .." *Calley v. Callaway,* 519 F.2d 184, 224 (5th Cir. 1975). *See United States v. Ehrlichman,* 389 F.Supp. 95, 97 (D.D.C.1974). The Court is willing to take the Government at its word that it has neither possession of nor access to the desired information, and that if the testimony of any of these "unknown experts" has ever been elicited in a criminal case, the defense has as ready access to the public records thereof as the Government.

 3. Finally, the defense seeks by this motion to obtain from the Government all information regarding the FBI's training course on the adverse effects of kidnapping or capture on the free will and volition of the kidnapped or captured. The Government has already expressed its intent to provide defense counsel with the requested psychological profiles and the results of any and all scientific tests done at its behest in connection with this case. Unless the Government plans to introduce expert testimony or scientific tests of its own, as to which this information might be relevant, there is nothing in Rule 16 or *Brady v. Maryland, supra,* that would compel the production of such information in advance of trial.

 Once again, the defense is amply equipped to conduct whatever inquiry it chooses into the public literature available on this subject and to call its own witnesses in support of its position. If, after reasonable attempts to acquire the desired information from the Federal Bureau of Investigation, the defense finds itself unable to elicit the cooperation of that agency, the matter may be raised again before this Court. For now the motion will be denied.

## IV. DEFENSE MOTION FOR DISCOVERY OF BOOKS, PAPERS, DOCUMENTS, TANGIBLE OBJECTS, AND OTHER PHYSICAL EVIDENCE

By this motion the defense seeks discovery of physical evidence seized by the Government from several premises, various scientific reports and related information, and written or recorded statements of the defendant and her captors.

Through its responsive memorandum the Government has indicated its willingness fully to comply with the desires of the defendant expressed in this motion, and, therefore, with the requirements of Rule 16 of the Federal Rules of Criminal Procedure. The Government will be taken at its word, and the motion will be deemed withdrawn, subject to later resubmission should government compliance not be forthcoming.

## V. DEFENSE MOTION FOR PRODUCTION OF STATEMENTS BY THE DEFENDANT AND RELATED ITEMS

 The Government has indicated its willingness to comply with the requests expressed in this motion, in accordance with its obligations under Rule 16. The Government need not produce before trial statements made by persons other than the defendant and not attributable to her. 18 U.S.C. § 3500(a); *United States v. Percevault, supra,* at 130–31.

## VI. DEFENSE MOTION FOR PRODUCTION OF GRAND JURY MINUTES

 The Court assumes that by this motion for production of grand jury "minutes" the defense seeks *transcripts* of the grand jury proceedings from which the indictment against the defendant was returned. It has long been the rule in the federal court system that production of grand jury minutes or transcripts is proper only upon a showing by

the defense of a "particularized need" for such testimonial records, which outweighs the policy of secrecy in grand jury proceedings. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959).

In *Dennis v. United States,* 384 U.S. 855, 868–75, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the Supreme Court found that the defendant had adequately carried his burden of showing a particularized need for the grand jury testimony of certain key witnesses in the case against him, where the grand jury proceedings had taken place some seven years before the trial.

Likewise, in the case cited by defense counsel here, a "particularized need" was held to have been shown in the defendant's assertions of the need to examine the grand jury testimony of the Government's witnesses for impeachment purposes and in the fact that the defendant was at a decided disadvantage with respect to the Government in tracking down potential witnesses. *United States v. Achtenberg,* 459 F.2d 91, 96 (8th Cir. 1972).

Although some of the circumstances weighing in favor of the defendant's motion in *Achtenberg* may be said to exist here, the Court is bound to take note of the 1970 amendment to the Jencks Act, 18 U.S.C. § 3500(e)(3), by which transcripts of grand jury testimony are to be included within the definition of "statements" of government witnesses, subject to production in behalf of the defense *only* after the witness has testified at trial. Under this amendment, the defendant has no right to pretrial discovery of such statements made in the grand jury. *United States v. Tager,* 481 F.2d 97, 100 (10th Cir. 1973), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974); *United States v. Daras,* 462 F.2d 1361, 1362 (9th Cir. 1972).

The motion will therefore be denied.

## VII. DEFENSE MOTION FOR DISCOVERY OF ELECTRONIC SURVEILLANCE

Pursuant to 18 U.S.C. § 3504, the defense seeks an affirmation or denial (plus other relevant information if the Government responds with an affirmation) by the Government of the occurrence of any unlawful electronic surveillance or eavesdropping on various named individuals, including the defendant. The Government has responded that it has requested the Department of Justice in Washington to commence a check with the appropriate investigative agencies to determine whether any unlawful electronic surveillance has been conducted of the defendant over the specified time period. As soon as the results of this agency check become known, asserts the Government, they will be made available to the Court and defense counsel.

The Government correctly notes that the defendant is without standing to complain, and therefore to require disclosure, of any such surveillance conducted of persons other than herself. *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Nevertheless, through affidavits sworn to and signed by the United States Attorney and the Special Agent in Charge, San Francisco office, FBI, the Government avers that it has no knowledge of any electronic surveillance conducted of persons other than the defendant, including her attorneys, during the period February 4, 1974, to the present. Such a denial by government affidavit of electronic surveillance is normally sufficient to satisfy the requirements of 18 U.S.C. § 3504, *In re Weir,* 495 F.2d 879, 881 (9th Cir. 1974), particularly where, as here, the claim of electronic surveillance of the named individuals is phrased in general terms as to suspected times and places, *United States v. See,* 505 F.2d 845, 856 (9th Cir. 1974). Nevertheless, because the Justice Department's inquiry into this matter is likely to be more thorough and comprehensive than any such investigation by the United States Attorney or a single FBI regional office, the Court will await the results of the Department's check before ruling on this motion.

## VIII. DEFENSE MOTION FOR PRODUCTION OF BRADY MATERIAL

The Government has indicated that it will meet its responsibilities under *Brady v. Maryland, supra,* with all due diligence.

 As counsel for the defense pointed out at oral argument, there is often some difficulty in getting respective counsel to agree on what constitutes "exculpatory evidence." The Court is fully cognizant of the substance of this dispute, but it made clear during arguments that it would resolve any doubts as to what evidence is arguably "exculpatory" in favor of the defendant. The Court now orders the Government to do likewise. Where serious doubt as to the exculpatory quality of a particular item or items of evidence persists, then the Government should turn such evidence over to the Court forthwith for a determination of its exculpatory value.

The United States Attorney has agreed in open court to turn over to the defense all other arguably exculpatory evidence by one week from the day following oral argument on these matters, that is, by December 19, 1975. The Government will be expected to meet the terms of this agreement or advise the Court why it cannot.

## GOVERNMENT MOTIONS

## I and II. GOVERNMENT'S MOTIONS TO COMPEL HANDWRITING AND VOICE EXEMPLARS

Because both Government and defense counsel have indicated their arrival at an agreement on these matters, both motions will be deemed withdrawn.

## III. GOVERNMENT'S DEMAND FOR TIMELY NOTICE OF INTENTION TO RELY UPON MENTAL DEFENSES

 The Government has demanded that the defense comply with Rule 12.-2(a) and (b) of the Federal Rules of Criminal Procedure, which requires a criminal defendant to give notice in advance of the date set for trial whether he or she intends to rely on the defenses of insanity or "mental disease or defect inconsistent with the mental element required for the offense charged" (diminished capacity).

Although the defense has responded that it does not intend to rely on such defenses, it has indicated that closely related to the anticipated defense of coercion will be the question of whether the defendant was subjected to such intense mental and psychological pressure by her captors as to have become "brainwashed" by them and "converted" to their cause. Regardless of the label applied to this somewhat novel defense (and as the defense noted in oral argument, it is only a possible defense at that), the defense counsel stated in relatively clear fashion that the *mental condition* of the defendant at the time of the offense would be at issue. Because Rule 12.2(b) expressly contemplates any "other condition bearing upon the issue of whether [the accused] had the mental state required for the offense charged" as within the "mental disease or defect" category, the Court finds that the Government was within its rights in demanding that the defense disclose its intentions with respect to relying on such a defense. As it would appear that counsel for the defense has complied, at least in oral argument, with this demand, the matter does not require the further attention of the Court at the present time.

## IV. GOVERNMENT'S MOTION FOR ORDER COMPELLING DEFENDANT TO SUBMIT TO PSYCHIATRIC EXAMINATION

Closely linked with the preceding motion is the motion to compel psychiatric examination of the defendant. At oral argument both parties indicated that they are in agreement as to the Government's right to have the defendant examined by psychiatric experts of the Government's own choosing. The defense has also indicated that it may wish to call its own experts on this subject.

Both parties having reached agreement on the need to exchange names and numbers of psychiatric expert witnesses to be called, the Court will therefore order that an exchange of such information be completed no later than January 5, 1976.

 The only subject over which some disagreement persists is the question of exchanging the findings and conclusions of the experts chosen by each side. The Court is of the opinion that Rules 16(a)(1)(D) and (b)(1)(B) contemplate a mutual exchange of the results or reports of physical or mental examinations. Each side will therefore be expected to turn over to the other within a reasonable time after the completion of psychiatric examinations of the defendant a written report of the findings and conclusions of the examining expert.

The following is a summary of the disposition of the aforedescribed motions; it will constitute the Court's Order in this matter:

I. Defense Motion for Access to Government's files—DENIED.

II. Defense Motion for Discovery of Witnesses—As to witness lists, Motion DENIED; as to request for statements of prospective Government witnesses, DEEMED WITHDRAWN; as to request for *Brady* requirements on impeaching evidence, DEEMED WITHDRAWN.

III. Defense Motion for Production of Expert Witnesses—As to psychiatric profiles, DEEMED WITHDRAWN; as to experts who could testify as to effects of kidnapping, DENIED; as to information regarding FBI training program, DENIED WITHOUT PREJUDICE.

IV. Defense Motion for Discovery of Books, Papers, etc.—DEEMED WITHDRAWN.

V. Defense Motion for Production of Defendant's Statements—DEEMED WITHDRAWN.

VI. Defense Motion for Production of Grand Jury Minutes—DENIED.

VII. Defense Motion for Discovery of Electronic Surveillance—RULING POSTPONED PENDING JUSTICE DEPARTMENT REPORT.

VIII. Defense Motion for Production of *Brady* material—DEEMED WITHDRAWN SUBJECT TO REFILING SHOULD GOVERNMENT FAIL TO COMPLY.

I. Government's Motion to Compel Handwriting Exemplar—DEEMED WITHDRAWN.

II. Government's Motion to Compel Voice Exemplar—DEEMED WITHDRAWN.

III. Government's Demand for Timely Notice of Intention to Rely upon Mental Defenses—DEEMED WITHDRAWN.

IV. Government's Motion to Compel Psychiatric Examination—ORDERED THAT DEFENSE AND GOVERNMENT EXCHANGE EXPERT WITNESS INFORMATION NO LATER THAN JANUARY 5, 1976.

FURTHER ORDERED THAT DEFENSE AND GOVERNMENT EXCHANGE WRITTEN REPORTS OF EXPERTS' FINDINGS AND CONCLUSIONS WITHIN REASONABLE TIME AFTER COMPLETION OF PSYCHIATRIC EXAMINATIONS.

It is so ORDERED.