IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION



FILED

April 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9704-CR-00140 |
| | ) | |
| vs. | ) | Carter County |
| | ) | |
| NEIL M. FRIEDMAN | ) | Hon. Lynn W. Brown, Judge |
| | ) | |
| Appellant. | ) | (DUI) |


FOR THE APPELLANT:

**THOMAS E. COWAN, JR.**
Attorney at Law
Colony Square
111 S. Main St.
Elizabethton, TN 37643

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL J. FAHEY, II**
Assistant Attorney General
Criminal Justice Division
425 Fifth Ave. North
Nashville, TN 37243-0490

**DAVID E. CROCKETT**
District Attorney General
Rt. 19, Box 99
Johnson City, TN 37601

**KENNETH C. BALDWIN**
Asst. District Attorney General
Carter County Justice Center
900 E. Elk Ave.
Elizabethton, TN 37643


OPINION FILED:_____


**AFFIRMED**


**CURWOOD WITT, JUDGE**

## OPINION

The defendant, Neil Friedman, appeals from his convictions of third offense driving under the influence and driving on a revoked license. He was convicted by a jury of his peers in the Carter County Criminal Court. The court imposed an eleven month, 29 day sentence for DUI, six months of which is to be served in the county jail. The court also revoked Friedman's driving privilege for six years and fined him $5,000.00. For driving on a revoked license, the court imposed a six month sentence, with 30 days to be served in the county jail, and fined Friedman $500.00. The sentences were imposed consecutively. In this direct appeal, Friedman claims the trial court erred (1) in proceeding to trial despite his claimed incompetency due to amnesia of the relevant events and (2) in denying his motion to suppress the blood alcohol test results relied on by the state in its case-in-chief. Finding no error requiring reversal, we affirm the judgment of the trial court.[1]

On March 18, 1995, the defendant lost control of his vehicle on a public roadway and struck a utility pole. He received serious injuries which required extended hospitalization. As a result of his injuries, the defendant apparently has no memory of the wreck itself, as well as events beforehand and afterwards. At the scene of the wreck, the defendant was observed to be under the influence of alcohol, and he was determined to be driving despite the fact his driver's license was revoked.

---

[1]It has not gone unnoticed by this court that the defendant has completely failed to include appropriate references to the record, and to a lesser extent, citation to authorities, in its brief. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7). Although in this case we have elected not to treat the issues as waived based upon this shortcoming, parties litigating in this court are advised that failure to follow the rules of court is a perilous practice which may result in technical default of the issues improperly presented. See Tenn. Ct. Crim. App. R. 10(b).

# I

Friedman's first challenge relates to the claim he is incompetent to stand trial because he suffers amnesia relative to the pertinent events. Prior to trial, defense counsel filed a motion requesting a hearing on the issue of his client's competency to stand trial. The case was set for motions hearings several months later. On the date of the motions hearing, defense counsel filed a motion to continue the competency hearing due to the defense expert's unavailability on the date of the hearing. In support of the motion, defense counsel filed an affidavit of the proposed expert, a clinical psychologist who averred she had been "retained . . . as an expert witness as to the present competency of Mr. Friedman." She further averred that due to a recent surgery, her busy work schedule, and her upcoming vacation, she would not be able to appear in court on the date of the motions hearing. At the motions hearing, the court denied the motion to continue based upon the age of the case and the need to move forward to trial. The court also ruled adversely to the defendant on the motion to determine competency itself. Before making this ruling the court made inquiry of the defendant regarding his job, his injuries, his understanding of the nature of the charges and proceedings against him, the duties of the attorneys, jury and the court, and his inability to remember the relevant events and discuss them with his attorney based upon his own recollection. The court also noted the complete absence of an allegation in the psychologist's affidavit that the defendant was not competent to stand trial.

On the morning of trial, the defense again raised the issue of the defendant's competency. At this time, it offered a "neuropsychological consult" report authored by a different mental health professional than the one whose affidavit had been filed with the motion for continuance. The notarized report concluded that the defendant suffers from retrograde amnesia and posttraumatic amnesia. Based upon this report, the defense argued the court should exercise its

3

power to inquire into the defendant's competency through a court-ordered competency evaluation. In denying the request, the court found the report lacking in any allegation the defendant was not competent to stand trial.

There are two aspects to this issue. First, we must address whether the trial court's denial of the motion to continue the competency hearing was proper. Second, we must determine whether the court properly proceeded to trial, rather than finding the defendant incompetent or ordering an evaluation on that issue.

**A**

The decision whether to grant a motion for a continuance is a matter of discretion for the trial court, the denial of which will not be overturned on appeal absent a clear showing the trial court abused its discretion to the prejudice of the defendant. State v. Melson, 638 S.W.2d 342, 359 (Tenn. 1982); Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973). A motion for continuance due to the unavailability of a witness requires the party seeking to offer the witness to file a motion setting forth the grounds with particularity; however, an oral motion is sufficient if allowed by the trial court. State v. Dykes, 803 S.W.2d 250, 256 (Tenn. Crim. App. 1990); Tenn. R. Crim. P. 47. Such a motion must be supported by an affidavit containing the following:

> (a) the substance of the facts that the accused expects to prove through the unavailable witness, (b) sufficient facts to establish the relevance and materiality of the unavailable witness, (c) that the testimony would be admissible if the witness were available, (d) that the testimony is not merely cumulative to other testimony, (e) that the witness will be available at a later date, and (f) diligence was exercised to obtain the presence of the witness.

Dykes, 803 S.W.2d at 256-57 (footnotes omitted); see State v. Zirkle, 910 S.W.2d 874, 884 (Tenn. Crim. App. 1995). This court has previously recognized that a motion to continue appropriately may be denied for the failure to file a properly drafted affidavit. Dykes, 803 S.W.2d at 257.

4

In the case at bar, the defense's affidavit is deficient in several respects under the Dykes standard. It fails to address all of the required issues. Therefore, the trial court did not abuse its discretion in denying the motion to continue. Additionally, the defendant did not later produce any evidence in the form of an expert opinion that he was incompetent to stand trial, and accordingly, we cannot find prejudice on this record.

**B**

The next question is whether the court erred in proceeding to trial rather than finding the defendant incompetent or ordering a competency evaluation.[2] The test for determining whether a defendant is competent to stand trial is whether "[the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as a factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788 (1960) (per curiam); State v. Black, 815 S.W.2d 166, 173-74 (Tenn. 1991).

> When a person charged with a criminal offense is believed to be incompetent to stand trial, or there is a question as to his mental capacity at the time of the commission of the crime, the [trial court] may, upon [its] own motion or upon petition by the district attorney general or by the attorney for the defendant and after a hearing, order the defendant to be evaluated . . . .

Tenn. Code Ann. § 33-7-301(a) (Supp. 1997). On appeal, the trial court's decision will not be reversed unless an abuse of discretion is shown. State v. Lane, 689 S.W.2d 202, 204 (Tenn. Crim. App. 1984).

In this case, we find nothing in the affidavit filed at the motions hearing

---

[2]Amnesia, in and of itself, is not a defense under the Criminal Code of 1989. See Tenn. Code Ann. §§ 39-11-501 to -505 (1997) (general defenses to criminal acts); see also State v. Dempsey Ray, No. 86-290-III, slip op. at 7 (Tenn. Crim. App., Nashville, Mar. 2, 1988) ("Amnesia in and of its self [sic] does not constitute incompetency to stand trial.").

or in the neuropsychologist's report filed on the day of trial which reasonably would lead the court to question the defendant's competence. Likewise, the defendant's testimony at the motions hearing does not point to incompetency. To be sure, the evidence of record demonstrates that the defendant understood the charges against him, the facts that must be proven to obtain convictions, and the consequences that would result upon conviction. See generally Jonathan M. Purver, Annotation, "Amnesia as Affecting Capacity to Commit Crime or Stand Trial," 46 A.L.R. 3d 544, §7 (1972).

In so holding, we reject this defendant's claim his inability to remember the events of the crimes themselves rendered him unable to assist in his defense. As an example, he claims his counsel learned during a trial recess that the defendant's actions and appearance at the scene of the wreck were consistent with an elevated glucose level from his diabetic condition rather than intoxication. Friedman claims that his amnesia kept him from having this defense properly prepared at trial. We fail to find merit in the argument. The record contains no factual basis for a finding defense counsel learned of this possible defense mid-trial. The "spectator attending the trial" who allegedly informed defense counsel of this fact did not testify at the motion for new trial. Moreover, the defendant's medical records, offered into evidence at trial, reflect the elevated glucose level.[3] There is no evidence these records were not available to the defense prior to trial; in fact, the indications are to the contrary.[4]

_____

[3]It has not escaped our notice that the hospital records the defendant claims should have been suppressed based upon federal confidentiality law, see section II below, are the sole source of the evidence of his elevated blood glucose level.

[4]The United States District Court for the Eastern District of Tennessee considered an alleged amnesiac defendant's claim he was incompetent to stand trial in United States v. Stubblefield, 325 F. Supp. 485 (E.D. Tenn. 1971). That court found the defendant had a rational and factual understanding of the proceedings against him, and he had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding unless the alleged amnesia prevented him from remembering the acts alleged in the indictment. Stubblefield, 325 F. Supp. at 486. The court had

Accordingly, we find no abuse of discretion in the trial court's decisions not to order a competency evaluation of the defendant and to overrule the defendant's motion to determine him incompetent to stand trial.

## II

In his second issue, Friedman claims the trial court erred in failing to consider a motion to suppress the blood alcohol test results (1) ordered by a law enforcement officer and analyzed by the Tennessee Bureau of Investigation and (2) ordered by medical personnel and analyzed by hospital personnel. The motion was filed on the morning of trial, and the court declined to consider it due to its untimeliness under the local rules of court[5] and "the law." The trial court held that a motion to suppress filed on the day of trial was too late. See Tenn. R. Crim. P. 12(f). The defendant's basis for seeking suppression of the T.B.I. test results is Code section 55-10-406(b), and the state has conceded the propriety of the defendant's position in this regard. The defendant's basis for seeking suppression of the hospital results is found in federal law and regulations, which the defendant

---

concerns that the defendant's amnesia might affect his ability to consult with and assist his attorney, that he might be unable to testify in his own behalf, that if a conviction was obtained the state's case might not reach proof beyond a reasonable doubt in light of the amnesia, and that the defendant might be deprived of a fair trial. In order to address those concerns, the court ordered the prosecution to open its files to the defense to assist the defendant and his counsel in reconstructing the evidence of the crime. Stubblefield, 325 F. Supp. at 486. In the case at bar, the defense makes no complaint that it was denied access to the state's evidence, and the record reflects the court granted the defense's discovery motion prior to trial. The record supports the conclusion that the following witnesses and information were available through review of the prosecution's files and/or thorough investigation: (1) an eyewitness to the wreck, (2) eyewitnesses to the defendant's alleged drunken condition earlier in the day, (3) eyewitnesses who responded to the scene and treated the defendant in the hospital, and (4) extensive medical records. Thus, we fail to see how the defendant was prejudiced given the extensive amount of extrinsic evidence available to him relative to the crimes.

[5]According to the excerpt of the "General Order for Local Rules in the Circuit, Chancery, and Criminal Courts First Judicial District of Tennessee" filed as an exhibit to the motion for new trial, motions to suppress must be filed in writing at least seven days prior to the date set for motions hearings unless the court extends the deadline upon a showing of good cause. Violation of the rule authorizes the court to summarily dismiss untimely motions. General Order for Local Rules in the Circuit, Chancery and Criminal Courts First Judicial District of Tennessee, R.5.02(D) (March 1, 1991).

claims prevent the use in criminal prosecutions of medical records maintained by hospitals receiving federal funding.

Rule 12(b)(3) of the Tennessee Rules of Criminal Procedure requires motions to suppress to be made "prior to trial." Tenn. R. Crim. P. 12(b)(3). "Prior to trial" in the context of Rule 12(b)(3) means sometime earlier than "the day of trial when the jury is waiting in the hall." State v. Smith, 701 S.W.2d 216, 217 (Tenn. 1985) (quoting State v. Hamilton, 628 S.W.2d 742, 744 (Tenn. Crim App. 1981)). Failure to raise a motion to suppress results in waiver of the issue, although the trial court may, upon cause shown, grant relief from the waiver. Tenn. R. Crim. P. 12(f).

In the case at bar, the motion to suppress was untimely. It was filed on the day of trial. Thus, the question is whether the trial court should have exercised its authority under Rule 12(f) to grant relief from the waiver. The defendant claims he had no opportunity to file his motion to suppress at an earlier date because the court allowed his Rule 16 discovery motion on October 4, 1996, and the next setting was November 4, 1996, the trial date. There were no available motions days between the grant of the discovery motion and the trial date. Counsel claims he could not have filed the motion to suppress prior to the grant of the discovery motion because he did not know what evidence the state had that he would want suppressed. The fallacy of this argument is found in the transcript of the hearing on the motion for new trial. The transcript reflects the following exchange between the court and defense counsel.

> THE COURT: Mr. Cowan, weren't you aware of that hospital blood test long before [the day discovery was granted]?
>
> MR. COWAN: The hospital blood test, yes. I thought that frankly was the only thing the State was going to travel on, just to be very candid with you.

Thus, defense counsel knew about the hospital blood alcohol test results in time to

have raised the issue on a motions day prior to trial. Further, he believed it was the only evidence the state would use in proving the blood alcohol level. For some reason, however, counsel chose not to or neglected to file a timely motion to suppress. We believe this alone constitutes a proper basis for failing to find "cause" for granting relief from the waiver provisions of Rule 12(f).

Moreover, we do not see how any alleged error in the trial court's summary denial of Friedman's untimely motion has affected the outcome of this case to his detriment. We reject outright his contention that the federal statutory and regulatory authority cited in his brief prohibit the use of medical records like those introduced at trial pertaining to the blood alcohol test results performed by hospital personnel. See 42 U.S.C.A. § 290dd-2 (Supp. 1997);[6] 42 C.F.R. §§ 2.1 - 2.67 (1997). These provisions deal with confidentiality of patient records "maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States . . . ." 42 U.S.C.A. § 290dd-2(a) (Supp. 1997). The provisions generally prohibit such records from being used against a patient as proof of criminal charges. 42 U.S.C.A. § 290dd-2(c) (Supp. 1997). The defendant failed at trial and at the motion for new trial hearing to offer any evidence whatsoever that these provisions are applicable to the blood tests at issue. He failed to show that the hospital which performed the tests was a recipient of federal funds and therefore subject to the federal authorities, and he failed to show that the records are protected by the statute because they pertain to activities related to treatment and prevention of substance abuse.

---

[6]The provision cited in the defendant's brief is actually 42 United States Code section 2900dd-3(a). We have been unable to locate any such provision in the federal code. We presume the section of chapter 42 upon which the defendant relies is 290dd-2.

9

Finally, we see the admission of the T.B.I. test results, although conceded by the state to have been inappropriate, as nothing more than harmless error. The evidence of the defendant's impairment from alcohol was overwhelming. There was strong eyewitness testimony of several credible individuals supporting a conclusion of impairment from intoxication. An officer saw the defendant drunk earlier that day. An eyewitness to the wreck saw the defendant's erratic driving. Emergency personnel smelled alcohol on the defendant after the wreck.[7]

---

[7]At oral argument, defense counsel urged this court to review the possibility of plain error in that the hospital blood test result was stated as "218" rather than in decimal form, i.e., ".218". The state offered no evidence at trial interpreting the "218" result in decimal form as contemplated by the statute. See Tenn. Code Ann. § 55-10-408 (1993) (amended 1995, 1996). The issue was raised in the motion for new trial but was not assigned as error on appeal. We decline to notice the issue as plain error. The evidence of the "218" blood alcohol level was admitted during the state's case-in-chief without defense objection. In closing argument, defense counsel asserted that the state failed to offer expert testimony interpreting this evidence; therefore, the defense claimed the jury should not find this evidence probative of whether the defendant drove under the influence. We believe that any alleged error in this regard presents no more than a question of the sufficiency of the evidence. However, we believe the evidence independent of both the T.B.I. and hospital blood alcohol test results overwhelmingly supports the conclusion the defendant was under the influence of an intoxicant. Therefore, had the issue been raised as a challenge to the sufficiency of the evidence, we would find it without merit.

In sum, we find the defendant's issues lacking in merit.  We affirm the judgment of the trial court.


_____
CURWOOD WITT, JUDGE


CONCUR:


_____
GARY R. WADE, JUDGE


_____
JOSEPH M. TIPTON, JUDGE